IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JENARA STEELE, et al.,          §
                                §
                Plaintiffs,     §
                                §  Civil Action No. 3:09-CV-0603-D
VS.                             §
                                §
GREEN TREE SERVICING, LLC,      §
et al.,                         §
                                §
                Defendants.     §

MEMORANDUM OPINION
AND ORDER

In this lawsuit arising from efforts to collect indebtedness owed on a residential mortgage, the court must decide whether defendants are entitled to summary judgment dismissing plaintiffs' claims and establishing defendants' declaratory judgment counterclaims. For the reasons that follow, the court grants summary judgment dismissing most of plaintiffs' claims, raises *sua sponte* that defendants are entitled to summary judgment dismissing the balance of plaintiffs' claims, and denies summary judgment establishing defendants' declaratory judgment counterclaims. The court also dismisses as moot defendants' appeal from an order of the magistrate judge.

I

This is an action by plaintiffs Jenara and Shannon Steele ("the Steeles") against defendants Green Tree Servicing, LLC ("Green Tree") and REO Properties Corp. ("REO"). The Steeles allege claims for breach of contract, anticipatory breach of

contract, negligent misrepresentation, violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, violation of the Texas Debt Collection Practices Act ("TDCPA"), Tex. Fin. Code Ann. 392.001 *et seq.* (Vernon 1997), and unreasonable collection efforts related to the origination and attempted foreclosure of their residential home. They also demand an accounting and seek injunctive relief precluding defendants from foreclosing on their residence.

The Steeles executed a note and a deed of trust with CTX Mortgage Company ("CTX") in 1996.[1] Wells Fargo Home Mortgage ("Wells Fargo") serviced the loan. The Steeles eventually fell behind on their note payments and entered into a repayment agreement with Wells Fargo in December 2001. In 2003 Wells Fargo accelerated the note and foreclosed on the property, but it rescinded the foreclosure sale in 2004. Before and after the foreclosure, the Steeles disputed the amount owed on the note; they now contend that the acceleration of the note was wrongful and that the note was never reinstated.

CTX assigned the loan and the lien to GE Mortgage Services, LLC, which assigned the lien to REO in 2006. REO used Ocwen Loan

---

[1]In recounting the factual background, the court summarizes the evidence in the light most favorable to the Steeles as the summary judgment nonmovants and draws all reasonable inferences in their favor. *E.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

Servicing, LLC ("Ocwen") to service the loan in 2006. The Steeles were still behind on their loan payments, and Ocwen, on behalf of REO, entered into a forbearance agreement with the Steeles in March 2007. In April 2008 REO transferred the loan servicing rights to Green Tree, the current loan servicer. In conjunction with this transfer, Green Tree sent the Steeles a notice of assignment that, among other things, specified an address at which Green Tree would receive any qualified written requests. In October 2008 the Steeles sent Green Tree a request for a transaction history, but Green Tree did not respond. The Steeles sent a second letter in January 2009. After Green Tree informed the Steeles in March 2009 of its intent to foreclose, the Steeles filed this suit. Green Tree later appointed a substitute trustee to foreclose on the Steeles's residence.

Green Tree contends that the Steeles did not send a letter to the address designated for qualified written requests. The Steeles maintain that, because of previous calculation errors affecting the loan balance, Green Tree repeatedly demanded sums that the Steeles did not owe; because REO has not filed a statutory bond, it is prohibited from collecting debts in Texas; and because the deed of trust does not authorize a mortgage servicer to appoint a substitute trustee, Green Tree's attempted foreclosure is improper.

Defendants move for summary judgment dismissing the Steeles's claims, or, alternatively, partial summary judgment establishing

defendants' declaratory judgment claims. Defendants also appeal an order of the magistrate judge denying their motion for a protective order and move to strike a portion of the Steeles's summary judgment evidence.

II

The court first addresses the Steeles's claim for violations of RESPA. The facts material to this claim are not in dispute. The Steeles sent two letters to Green Tree, at addresses other than the one designated for qualified written requests, requesting information pertaining to their loan. Green Tree did not respond or provide the requested information.

Section 2605(e)(1)(A) of RESPA provides:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C. § 2605(e)(1)(A). A "qualified written request" is defined as

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer

regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). In implementing RESPA, the Secretary of the Department of Housing and Urban Development ("HUD") promulgated 24 C.F.R. § 3500.21(e)(1) (2010), which states, in part: "By notice either included in the Notice of Transfer or separately delivered by first-class mail, postage prepaid, a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests."[2]

When Ocwen assigned the servicing rights for the Steeles's loan to Green Tree in April 2008, Green Tree sent the Steeles a notice of assignment indicating that Green Tree was the new loan servicer. In a section titled "Notice About Your Rights," Green Tree stated: "If you want to send a 'qualified written request' regarding the servicing of your loan to your new servicer, it must be sent to this address: Green Tree, PO Box 6176, Rapid City, SD 57709-6176." Ds. App. 42.

On October 10, 2008 Green Tree sent the Steeles a "Notice of

---

[2]Although the court is not obligated to defer automatically to the HUD Secretary's construction of 12 U.S.C. § 2605(e), the court should defer to the interpretation of any ambiguous language unless the interpretation is arbitrary and capricious. *See, e.g., Hancock v. Chi. Title Ins. Co.*, 635 F.Supp.2d 539, 548 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984)), *appeal docketed*, No. 10-10136 (5th Cir. Feb. 12, 2010). The meaning of "receive" in RESPA is ambiguous, and the regulation provides an interpretation that is neither arbitrary nor capricious. The Steeles do not dispute the applicability of the regulation.

Receipt of Partial Payment." It stated that it had received a partial payment; that it had begun the foreclosure process; that it had previously sent a "Notice of Default and Right to Cure Default" indicating that the Steeles owed nearly $200,000 on the note; and that its acceptance of partial payment did not waive its rights or remedies. The notice concluded: "If you have any questions relating to this matter, please contact our office at (800) 643-xxxx." Ps. App. 22. The letter was signed by Green Tree's collection group, whose contact information included the telephone number mentioned in the body of the letter and an address in Earth City, Missouri. At the close of the letter, a second address was listed for remitting payment.

After receiving the letter, the Steeles sent what they contend is a qualified written request to Green Tree's collection group at the Earth City, Missouri address. Green Tree never responded to the letter.

In January 2009 attorneys for Green Tree sent a "Demand for Payment and Notice of Intent to Accelerate" the Steeles's loan. The letter stated: "Please contact GREEN TREE SERVICING LLC or Baxter & Schwartz, P.C. at 713-933-xxxx so that an updated amount to cure your default can be provided." Ps. App. 24. The Steeles sent what they contend is a second qualified written request to Green Tree's attorneys at Baxter & Schwartz, P.C. It appears that Green Tree responded on March 16, 2009, stating that it could not

release the Steeles's loan information without their authorization. The letter did not provide any information requested by the January 2009 letter, but it gave another address for Green Tree customer service in Rapid City, South Dakota.

The court holds that Green Tree never received a qualified written request because the Steeles's letters were not sent to the exclusive address that Green Tree specified. *See Bally v. Homeside Lending, Inc.*, 2005 WL 2250856, at *2-3 (N.D. Ill. Sept. 8, 2005) (holding that lender's RESPA duty to respond was not triggered by letters sent to lender's lawyer or faxed to its office, even if lender actually received the letters, where lender had stated that qualified written requests must be sent by mail to specific address). Green Tree designated in the notice of transfer an exclusive address for sending qualified written requests. Although subsequent correspondence sent to the Steeles indicated that they could contact Green Tree or its attorneys at other addresses, Green Tree did not indicate that it would receive qualified written requests at any other address. Rather, through the other addresses and telephone numbers, Green Tree provided the Steeles with informal avenues to obtain other information. Because a reasonable trier of fact could only find that Green Tree established an exclusive location at which it would accept qualified written requests, and that the Steeles never sent a proper request to that address, Green Tree had no duty under RESPA to respond to the

Steeles's letters.  Defendants' motion for summary judgment is therefore granted as to the RESPA claim.

                                    III

     The court considers next the Steeles's breach of contract claim.  The Steeles allege that defendants breached the deed of trust by wrongfully attempting to foreclose on their residence, by violating RESPA, and by appointing a substitute trustee.[3]

                                     A

     The Steeles have presented no evidence that would permit a reasonable trier of fact to find that Green Tree was a party to a contract with them.  "To recover for breach of contract, one must

_____

[3]In their response, the Steeles set forth two additional theories for breach of contract: (1) that defendants breached the contract by making the Steeles's performance under the contract impossible; and (2) that defendants repudiated their contractual obligations after the Steeles performed.  The Steeles did not clearly plead breach by rendering performance impossible; therefore, the court will not consider this basis for their claim. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.") (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)); *El Sereno, LLC v. City of Garland*, 2010 WL 1741334, at *1 n.5 (N.D. Tex. Apr. 29, 2010) (Fitzwater, C.J.) (citing *Days Inn Worldwide, Inc. v. Sonia Invs.*, 2006 WL 3103912, at *20 (N.D. Tex. Nov. 2, 2006) (Fitzwater, J.)).
     The Steeles did briefly mention the repudiation theory by stating that defendants' anticipatory breach caused them damage. They averred that "[t]he breach of the contract, the anticipatory breach of the contract, negligent misrepresentation and violations of [RESPA] . . . were a proximate cause of [the Steeles's] damages as set forth below."  2d Am. Compl. 5 ¶ 18.  But the amended complaint contains no other description of claims for anticipatory breach or negligent misrepresentation.  Accordingly, the court will not consider this ground.

show: 1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages to the plaintiff resulting from the breach." *Palmer v. Espey Huston & Assocs., Inc.*, 84 S.W.3d 345, 353 (Tex. App. 2002, pet. denied) (citing *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 771 (Tex. App. 2001, no pet.)). "[A] contract is not binding on a nonparty." *Sitaram v. Aetna U.S. Healthcare of N. Tex., Inc.*, 152 S.W.3d 817, 825 (Tex. App. 2004, no pet.). Because the Steeles bear the burden of proof on each element of their breach of contract claim, they must prove at trial that Green Tree is bound by a valid contract. *See id.; PennWell Corp. v. Ken Assocs., Inc.*, 123 S.W.3d 756, 767 (Tex. App. 2003, pet. denied).

Defendants point to summary judgment evidence that Green Tree's only relationship with the Steeles was as the loan servicer for REO. In response, the Steeles only state that "[i]t is undisputed that the Deed of Trust and the Note are valid and enforceable contracts and that Plaintiffs have standing to sue for breach of the contract." Ps. Br. 13. They point to no evidence that Green Tree was a party to either instrument; therefore, they have not met their burden of raising a genuine issue of material fact regarding whether Green Tree owed them contractual duties.

Green Tree is entitled to summary judgment dismissing the Steeles's breach of contract claim.

Defendants also assert that the Steeles did not comply with the terms of the note or deed of trust by making full and timely payments and therefore cannot maintain their breach of contract claim. The Steeles respond that they diligently attempted to make payments but could not because defendants made numerous misrepresentations concerning the account balance, which affected their mortgage payment due.

The note requires that the Steeles make monthly payments of $1,820.43. The deed of trust incorporates this requirement. In 2007 the Steeles entered into a forbearance agreement with Ocwen, the loan servicer at that time, acknowledging their default on the note and the deed of trust and agreeing to make $2,700 monthly payments in return for Ocwen's forbearance. The Steeles do not cite any evidence that would enable a reasonable trier of fact to find that they cured this default or that they made all of the monthly payments required under the forbearance agreement. On the contrary, the Steeles acknowledge that they did not meet their contractual obligations. Defendants have adduced evidence that the Steeles made no payments in 2009. A reasonable trier of fact could not find that the Steeles met their contractual obligations.

The Steeles also assert that Wells Fargo and Green Tree failed to properly credit several payments to their account. Even if true, this evidence only shows that the Steeles sporadically made

a handful of payments over a six-year period. The Steeles also appear to argue that their failure to perform was excused because, by incorrectly stating the amount owed, Green Tree made it impossible for them to pay on the note. This argument is without merit. A reasonable trier of fact could not find that, by stating a total amount owed, Green Tree prevented the Steeles from making their regular monthly payment of $2,700 due under the 2007 forbearance agreement. In turn, a reasonable trier of fact could not find that the Steeles's non-performance is excused.

The court accordingly grants summary judgment dismissing the Steeles's breach of contract claim.

IV

The court turns next to the Steeles's claim for violation of the TDCPA. Defendants point to the absence of evidence of a TDCPA violation.[4] The Steeles respond that defendants violated Tex. Fin. Code Ann. § 392.304(a)(8) (Vernon 1997) by sending them notice-of-default letters that described an incorrect amount owed and reflected "clear overcharges". Ps. Br. 16-17.[5]

_____

[4]Tex. Fin. Code Ann § 392.401 states: "A person does not violate this chapter if the action complained of resulted from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error." But the court will not consider this defense because, even had defendants pleaded it in their answer, they have not asserted it in their summary judgment motion.

[5]In their second amended complaint, the Steeles allege that defendants breached Tex. Fin. Code Ann. §§ 392.304(a)(10) (distributing a written communication that is represented falsely

- 11 -

Section 392.304(a)(8) states that "a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices . . . misrepresenting the character, extent, or amount of a consumer debt[.]"  "In order to constitute a misrepresentation, [defendants] must have made a false or misleading assertion." *Reynolds v. Sw. Bell Tel., L.P.*, 2006 WL 1791606, at *7 (Tex. App. Jun. 29, 2006, pet. denied).

The Steeles point to two letters that they contend misrepresented the amount of debt they owed: an October 10, 2008 "Notice of Receipt of Partial Payment," which stated that the Steeles owed $199,286.23, and a January 16, 2009 "Demand for Payment and Notice of Intent to Accelerate," which stated that the Steeles owed $205,298.28.  The Steeles contend that these totals were incorrect because Wells Fargo failed to properly credit their account for six payments that they made between 2002 and 2006.[6] They point to records——copies of cashier's checks, a receipt for a cashier's check, a carbon copy of a personal check, and documents

---

to be a document issued by a court) and 392.301(a)(8) (threatening to take an action prohibited by law).  But the Steeles fail to address these claims in their response.  They have accordingly failed to raise a genuine issue of material fact on these claims, and defendants are entitled to summary judgment dismissing them.

[6]If Green Tree's account balance was in error, the assertions regarding the amount of debt still owed would be false.  *See Baker v. Countrywide Home Loans, Inc.*, 2009 WL 1810336, at *7 (N.D. Tex. Jun. 24, 2009) (Boyle, J.) (denying defendant's motion for summary judgment on plaintiffs' TDCPA claim where plaintiffs presented evidence that they made three payments that were not reflected in account history).

from a Chapter 13 trustee——that indicate that they made payments. They also present evidence that these payments were not credited to their account.

The alleged Wells Fargo errors on which the Steeles base their TDCPA claim occurred before the March 2007 forbearance agreement. In that agreement, the Steeles conceded that, as of March 31, 2007, they owed $207,132.03 on the note. The forbearance agreement constitutes a modification of the note. "A contract modification must satisfy the traditional requirements of a contract——there must be a meeting of the minds supported by consideration." *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 702 (Tex. App. 2008, no pet.). The Steeles do not dispute that they signed and agreed to the forbearance agreement. Both parties gave consideration, "a bargained-for present exchange in return for a promise [that] consist[s] of a benefit that accrues to one party or a detriment incurred by the other party." *Id.* (citations omitted). The Steeles agreed to higher monthly payments and a down payment, and Ocwen agreed to forbear foreclosing on the Steeles's property. The modification also establishes the Steeles's loan balance as of March 31, 2007. The court therefore holds that a reasonable trier of fact could not find that the Steeles owed an amount other than $207,132.03 on March 31, 2007.

The Steeles also argue that Green Tree failed to record a November 5, 2008 payment of $1,820.43 (i.e., after the parties

entered into the forbearance agreement). They contend that this payment was deducted from their payment account on November 14, 2008, and they point to a transaction log that does not show a $1,820.43 payment until December 15, 2008. Defendants cite a different transaction log that shows a $1,820.43 credit on December 15, 2008 backdated to November 13, 2008, the day before the funds cleared the Steeles's payment account. The two logs, although in different formats, contain essentially the same information. A reasonable trier of fact could not find that the Steeles's evidence shows that Green Tree failed to properly account for the 2008 payment.

The Steeles have pointed to no evidence that would permit a reasonable trier of fact to find that Green Tree's statement of their account balance was incorrect. The court therefore grants defendants' motion for summary judgment as to the Steeles's TDCPA claim.

V

The court next turns to the Steeles's claim for unreasonable collection efforts. To recover on this claim at trial, the Steeles must prove that defendants' debt collection efforts "amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868-69 (Tex. App. 2008, no pet.) (citations and quotation marks omitted). Defendants point to the

absence of evidence to support this claim.

The Steeles respond that efforts to collect an already paid debt are unreasonable. *See Pullins v. Credit Exch. of Dallas, Inc.*, 538 S.W.2d 681, 682-83 (Tex. Civ. App. 1976, writ ref'd n.r.e.) (holding that repeated and harassing efforts to collect $50 debt were unreasonable where plaintiff consistently asserted debt was paid). But the debt in *Pullins* appears to have been paid in its entirety prior to the collector's harassing efforts. *See id.* While the precise sum the Steeles owed is in dispute, a reasonable trier of fact could only find that the Steeles were in default. Defendants did not seek sums not owed to them; nor do the Steeles provide any evidence that would permit a reasonable trier of fact to find that defendants' tactics were unreasonable under *EMC Mortgage*. *See Mitchell v. Chase Home Fin. LLC*, 2008 WL 623395, at *6 (N.D. Tex. Mar. 4, 2008) (Kinkeade, J.) (holding that defendant's collection efforts were not unreasonable where plaintiffs were in default on their loan).

The Steeles have failed to point to evidence that would enable a reasonable trier of fact to find that Green Tree's collection efforts were unreasonable. The court therefore grants defendants' motion for summary judgment in this respect and dismisses this claim.

In their response, the Steeles maintain that defendants failed to address their claims for anticipatory breach of contract and negligent misrepresentation or their request for an accounting, and that final summary judgment is therefore improper. In their reply brief, defendants counter that plaintiffs failed to give a short and plain statement of these claims.

"[T]he court will not consider an argument raised for the first time in a reply brief." *Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.)), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008). Because defendants have not moved for summary judgment in this respect, it would be error to grant this relief. *See, e.g., John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987). The court can, however, raise *sua sponte* that summary judgment is warranted on a particular claim, provided it affords the nonmovant notice and a fair opportunity to file an opposition response. *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *9 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (citing *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991)).

The Steeles allege in their second amended complaint that "[t]he breach of the contract, the anticipatory breach of the

contract, negligent misrepresentation and violations of [RESPA], as set forth above were a proximate cause of [the Steeles's] damages as set forth below." 2d Am. Compl. ¶ 18. The second amended complaint contains no other mention of the anticipatory breach of contract claim or the negligent misrepresentation claim.

"The elements of common law anticipatory breach are: (1) the defendant absolutely repudiated the obligation (2) without just excuse (3) plaintiff was damaged thereby." *Taylor Publ'g Co. v. Sys. Mktg. Inc.*, 686 S.W.2d 213, 217 (Tex. App. 1984, writ ref'd n.r.e.). Implicit in this definition is the requirement that each defendant be a party to a contract with the Steeles. In moving for summary judgment on the Steeles's breach of contract claim, defendants assert that Green Tree was not a party to a contract with the Steeles, that the Steeles cannot present evidence that they performed under the contract, and that the Steeles cannot present evidence that defendants breached a contract. In response to defendants' motion, the Steeles have failed to produce evidence that Green Tree was a party to a contract with them. Likewise, the Steeles have not produced evidence to support their claim of anticipatory breach against REO. Although REO is a party to the deed of trust, the note, and the forbearance agreement, the Steeles have not adduced any evidence that REO repudiated the contract. On the contrary, it appears that a reasonable trier of fact could only find that REO is attempting to enforce these contracts.

To prevail on a claim for negligent misrepresentation, a plaintiff must establish that

> (1) [a] representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). As discussed *supra* at § II, the Steeles contend that two letters misrepresented the amount of debt they owed. But the Steeles point to no evidence that the amounts listed in the letters were false, that the information was supplied for guidance of others in their business, that REO and/or Green Tree did not exercise reasonable care, or that the Steeles suffered pecuniary loss by their reliance on the letters.

The court therefore raises *sua sponte* that defendants are entitled to summary judgment dismissing the Steeles's anticipatory breach and negligent misrepresentation claims. Within 21 days of the date of this memorandum opinion and order, the Steeles may file a response brief and evidence appendix addressing why the court should not grant summary judgment dismissing their claims for anticipatory breach of contract and negligent misrepresentation. After considering this response, the court will either dismiss the claims or invite defendants to file a reply brief.

Defendants also move for summary judgment establishing that they have provided the Steeles with an accounting. They maintain that, because the Steeles entered into the forbearance agreement, there is no dispute about the amount owed as of March 2007. And they state they have provided the Steeles pay histories for the account that cover the period after the forbearance agreement. Defendants therefore request that the court enter summary judgment that they have provided an accounting to the Steeles. The Steeles do not directly respond to this part of defendants' motion, but they assert that the forbearance agreement is ambiguous and unreasonable because it could provide that the Steeles owed more than $400,000 on their original loan of $223,740.

"An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." *Michael v. Dyke*, 41 S.W.3d 746, 754 (Tex. App. 2001, no pet.). It appears that the Steeles request an accounting as a remedy. "An equitable accounting is proper when the facts and accounts presented are so complex adequate relief may not be obtained at law." *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717 (Tex. App. 2002, pet. denied). But if the party can obtain similar relief through standard discovery, the trial court may decline to order an accounting. *See id.* at 717-18.

The court holds that the forbearance agreement establishes the amount the Steeles owed as of March 31, 2007. The Steeles have failed to present evidence that would permit a reasonable trier of fact to find that defendants did not provide a subsequent account history. Defendants have produced evidence that they provided the Steeles a copy of the account history as requested in discovery. The record therefore lacks evidence that the Steeles cannot obtain, or have not already obtained, the account history they seek through discovery procedures. Accordingly, the court grants defendants' motion for summary judgment to the extent that the Steeles request an accounting.

VIII

Defendants also move for summary judgment to establish that REO is not required to be bonded under Tex. Fin. Code Ann. § 392.101. They maintain that REO is not a third-party debt collector, as defined by Tex. Fin. Code Ann. § 392.001(7). Defendants posit that Green Tree, not REO, is the entity servicing the loan. The Steeles respond that REO qualifies as a third-party debt collector because it acquired the Steeles's debt after they had defaulted.

Section 392.101(a) requires that, before engaging in debt collection in Texas, a third-party debt collector must obtain a surety bond and file a copy of the bond with the Secretary of State. The definition of "third-party debt collector" incorporates

the federal definition of "debt collector" in 15 U.S.C. § 1692a(6).

Tex. Fin. Code Ann. § 392.001(7). Section 1692a(6) provides:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.
>
> . . .
>
> The term does not include—
>
> . . .
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person[.]

15 U.S.C. § 1692a(6).

The Steeles do not address REO's bond status as a separate cause of action. Rather, they allege that REO's failure to file a bond is a ground for obtaining a preliminary injunction precluding foreclosure of their property. A trial court can enjoin a party from engaging in debt collection until it has posted a surety bond with the Secretary of State. *See CA Partners v. Spears*, 274 S.W.3d 51, 78-79 (Tex. App. 2008, pet. denied).

The Steeles assert that REO does not qualify for the exception provided in § 1692a(6)(F) because REO acquired the Steeles's debt after they had defaulted. *See CA Partners*, 274 S.W.3d at 79 ("[I]f

a debt is in default at the time the assignee acquires his interest in the debt, he is a 'third-party debt collector' within the contemplation of the section 392.101(a) of the Texas Finance Code."). But while the Steeles have presented evidence that Green Tree attempted to collect the debt, they have not adduced evidence that would permit a reasonable trier of fact to find that REO has attempted to collect the debt. And they have pointed to no evidence that REO is engaged in a business the principal purpose of which is the collection of debts.

The court accordingly grants summary judgment holding that the Steeles cannot obtain a preliminary injunction against foreclosure of their property based on REO's bond status.

IX

The court turns last to defendants' motion for summary judgment as to its declaratory judgment counterclaims.

A

Defendants seek judgment declaring that (1) the Steeles defaulted on the note; (2) the Steeles owed $207,132.03 on March 31, 2007; (3) Ocwen agreed to temporarily forbear foreclosing on the Steeles's property, but did not agree to forgive their default; (4) the Steeles were required under the forbearance agreement to make payments for insurance and taxes in addition to their loan payments; and, (5) if the court concludes that the forbearance agreement is ambiguous, that under the previous repayment agreement

between the Steeles and Wells Fargo, the Steeles were $68,524.53 in arrears in their payments on December 1, 2001. The Steeles posit that the forbearance agreement is ambiguous, but they do not otherwise respond to the declaratory judgment counterclaims.

B

Although defendants move the court to declare that the Steeles defaulted on the note, that they only agreed to temporarily forbear foreclosing on the property, and that the Steeles agreed to pay taxes and insurance in addition to their monthly loan payment, defendants did not allege these requests in their counterclaim. The court accordingly denies defendants' motion for summary judgment as to these requests for declaratory relief.[7]

C

The court also denies defendants' motion as to the other grounds: a request for a declaratory judgment that the Steeles owed $207,132.03 on March 31, 2007, and that the Steeles were $68,524.53 in arrears on December 1, 2001.

The federal Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or

---

[7]Even if the court did not deny relief for this reason, it would deny it for the reasons explained *infra* at § IX(C).

could be sought." 28 U.S.C. § 2201(a). Federal courts have broad discretion to grant or refuse declaratory judgment. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194-95 (5th Cir. 1991). The Declaratory Judgment Act is "an authorization, not a command." *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). It gives federal courts the competence to declare rights but does not impose a duty to do so. *See id.*

A declaratory judgment action is merely a vehicle that allows a party to obtain an "early adjudication of an actual controversy" which helps the parties avoid later-accruing damages. *Collin County, Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170-72 (5th Cir. 1990); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950) ("The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked."). Defendants are not attempting by their declaratory judgment action to help the parties avoid damages that might otherwise accrue. Rather, defendants essentially request that the court establish a baseline for the measure of damages for the Steeles's alleged breach of contract. *Cf. Kougl v. Xspedius Mgmt. Co. of DFW, L.L.C.*, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) (Fitzwater, J.) (denying as redundant a declaratory judgment claim seeking contract interpretation where

this would be resolved as part of breach of contract action); 6 Charles Alan Wright, et al., *Federal Practice & Procedure* § 1406, at 30-31 (3d ed. 1999) ("When the request for declaratory relief brings into question issues that already have been presented . . . a party might challenge the counterclaim on the ground that it is redundant and the court should exercise its discretion to dismiss it.").

The court declines in its discretion to enter such a declaratory judgment. Defendants' summary judgment motion is denied as to the declaratory judgment counterclaim.[8]

X

Defendants also appeal a ruling of the magistrate judge denying their motion for a protective order. In December 2009 the Steeles notified defendants that they intended to take a deposition on written questions of the Better Business Bureau seeking records of past complaints against Green Tree. Defendants moved for a protective order, which the magistrate judge denied.

The Steeles have not moved under Fed. R. Civ. P. 56(f) for a continuance of their obligation to respond to defendants' motion so

_____

[8]If the court later grants summary judgment dismissing the Steeles's remaining claims, defendants may want to consider voluntarily dismissing their declaratory judgment counterclaims so that the court can enter a final judgment. If they do not, the counterclaims will remain to be tried.

that they can obtain this evidence.[9] The court has granted summary judgment dismissing the claims to which the Steeles assert that this evidence is relevant. Defendants' appeal is therefore dismissed as moot.

XI

Defendants also object to evidence submitted by the Steeles in response to defendants' summary judgment motion. Considering the rulings of the court and the evidence on which it has relied, the court overrules defendants' objections as moot.

*    *    *

For the reasons explained, the court grants summary judgment dismissing the Steeles's RESPA, breach of contract, TDCPA, and unreasonable collection efforts claims and their request for an accounting, and it holds that the Steeles cannot obtain a preliminary injunction against foreclosure based on REO's bond status. The court raises *sua sponte* that defendants are entitled to summary judgment dismissing the Steeles's claims for anticipatory breach of contract and negligent misrepresentation, and it grants the Steeles 21 days from the date of this memorandum opinion and order to file a response brief and evidence appendix addressing why the court should not grant summary judgment dismissing these claims. The court denies defendants' motion for

---

[9]The Steeles state that "the information requested is not additional discovery pursuant to a Rule 56(f) request[.]" Ps. Feb. 17, 2010 Br. 4.

summary judgment establishing their declaratory judgment counterclaims. The court dismisses defendants' appeal from the magistrate judge's order as moot.

**SO ORDERED.**

September 7, 2010.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE